IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HARCHARANJIT SINGH BHUTTA, *et al.*, <br>    Plaintiffs, <br><br> v. <br><br> DRM CONSTRUCTION CORP., *et al.*, <br>    Defendants. | ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 3:22cv288 (RCY) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion for Entry of Default Judgment (ECF No. 18), seeking default judgment against Defendants DRM Construction Corporation ("DRM") and Gurpreet Singh (collectively "Defendants"). Defendants did not file a response to Plaintiffs' motion, and the deadline to respond has passed. For the reasons stated herein, the Court will GRANT IN PART AND DENY IN PART Plaintiffs' Motion for Entry of Default Judgment (ECF No. 18).

**I. BACKGROUND**

**A. Procedural History**

On April 24, 2022, Plaintiffs Harcharanjit Singh Bhutta and Gurpreet Bhutta (collectively "Plaintiffs") filed their Complaint against Defendants, alleging breach of contract, conversion, fraud, and a violation of the Virginia Consumer Protection Act. (ECF No. 1.) On July 13, 2022, Plaintiffs filed an Affidavit for Service of Process on the Secretary of the Commonwealth demonstrating service of process on Defendant Gurpreet Singh. ("Service of Process on Secretary," ECF No. 8.) On July 22, 2022, Plaintiffs returned a Proof of Service as to Defendant DRM. ("Proof of Service," ECF No. 9.) On August 29, 2022, the case was reassigned to the undersigned. On September 14, 2022, the Court issued a Show Cause Order asking Plaintiffs why

1

the case should not be dismissed for failure to prosecute. (ECF No. 11.) On October 3, 2022, the Plaintiffs filed their Request for Clerk's Entry of Default. (ECF No. 13.) On October 14, 2022, Plaintiffs filed their Corrected Declaration in Support of Request for Clerk's Entry of Default. (ECF No. 14.) On November 10, 2022, Plaintiffs filed their Certificate of Mailing. (ECF No. 15.) On December 13, 2022, Plaintiffs re-filed their Corrected Declaration Under Penalty of Perjury by Plaintiffs' Counsel in Support of Request for Clerk's Entry of Default. ("Re-Corrected Declaration," ECF No. 16.) On December 15, 2022, the Clerk entered default against the Defendants (ECF No. 17). On January 18, 2023, the Plaintiffs filed the present Motion for Entry of Default Judgment. (ECF No. 18.)

### B. Factual Allegations

Defendant DRM Construction Corporation is a residential construction corporation organized under New York law and authorized to do business in Virginia. (Compl. ¶¶ 2, 4.) Defendant Gurpreet Singh is the "president and sole officer of DRM" and a New York citizen. (*Id.* ¶¶ 2, 14.) Plaintiffs Harcharanjit Singh Bhutta and Gurpreet Bhutta are a married couple and citizens of Virginia. (*Id.* ¶ 1.)

On March 10, 2021, Plaintiffs entered into a contract with Defendants to construct their residence for $1,700,000. (*Id.* ¶ 5; "DRM Contract" 5, ECF No. 1-1.) Prior to any construction beginning, Plaintiffs deposited $40,000 with Defendants as an advance payment for the construction. (Compl. ¶ 6; Contract 5 ("Builder will commence construction work within two days after received [sic] the payment.").) After executing the DRM Contract and receiving payment, Defendants did not "take any of the steps normally associated with a general contractor's preparation for performance of a residential construction contract, including seeking quotations from subcontractors and materials suppliers." (Compl. ¶ 8.) Instead, Defendants made "numerous

excuses" as to why they could not perform the DRM Contract. (*Id.* ¶ 9.) Plaintiffs made a number of demands on Defendants for the return of their advance deposit of $40,000. (*Id.* ¶¶ 10.) At one point, Defendants acknowledged one of the demands and admitted that Plaintiffs were entitled to the return of their deposit, but eventually stopped responding to Plaintiffs' demands, still without returning the funds. (*Id.* ¶ 11.) On April 13, 2022, counsel for Plaintiffs made a written demand for the return of the advance deposit via email, but Defendants did not respond. (*Id.* ¶ 12; "Demand Letter," ECF No. 1-3.) Throughout this ordeal, Defendant Gurpreet Singh, on behalf of Defendant DRM, conducted all of the communications with Plaintiffs up to the point those communications ceased. (*Id.* ¶ 15.) As a result of the lack of communication by Defendants, Plaintiffs entered into a different contract for the construction of their residence with J.R. Walker & Co, LLC for $1,750,000. (*Id.* ¶ 10; ECF No. 1-2.)

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default t judgment. Under Rule 55(a), "the clerk must enter the party's default" when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After the clerk has entered default, the plaintiff may request the entry of a default judgment. *See* Fed. R. Civ. P. 55(b). If the claim is for a "sum certain or a sum that can be made certain by computation, the clerk . . . must enter judgment for that amount." Fed. R. Civ. P. 55(b)(1). If the claim is not for a sum certain, the plaintiff must apply to the court for entry of a default judgment. Fed. R. Civ. P. 55(b)(2). When considering whether to enter default judgment, a court must exercise sound discretion. *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). "The moving party is not entitled to default judgment as a matter of right." *Id*. "Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether

the facts as alleged state a claim." *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003); *see Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998). However, a plaintiff's factual allegations are not automatically accepted as true for the purposes of damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Kindred v. McLeod*, No. 3:08cv19, 2010 WL 4814360, at *3 (W.D. Va. Nov. 19, 2010).

### III. DISCUSSION

#### A. Procedural Requirements

As a preliminary matter, the Court finds that the procedural requirements of maintaining this suit in federal court are satisfied, to wit: the Court has subject matter jurisdiction over the controversy on the basis of diversity of citizenship; the Court has personal jurisdiction over the Defendants based on Defendants' minimum contacts arising out of their business in the forum; and venue is proper because a substantial part of the events giving rise to the claim occurred in the forum.

Additionally, service of process was properly effected in this case, a prerequisite before a court may grant default judgment. *Winzeler v. Sanchez*, No. 2:13CV612, 2015 WL 12645001, at *4 (E.D. Va. July 28, 2015);; *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Sustainable Works*, No. 1:14–CV–1023, 2015 WL 300494, at *2 (E.D. Va. Jan. 22, 2015). Federal Rule of Civil Procedure 4(h) states that a corporation, partnership, or other unincorporated association may be served in a judicial district of the United States in the manner prescribed in Rule 4(e)(1) for serving an individual or by delivering a copy of the summons and complaint to an officer, managing, or general agent, or any other agent authorized by law to receive service of process. Rule 4(e)(1) provides that an individual may be served in a judicial district of the United

States "by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

When there is personal jurisdiction over a defendant in Virginia, the process server is permitted to serve the Secretary of the Commonwealth of Virginia if the party seeking service files an affidavit with the court stating either

> (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served. In either case, such affidavit shall set forth the last known address of the person to be served.

Va. Code Ann. § 8.01-329(A)–(B).

Plaintiffs have established that Defendants are not Virginia residents and thus service on the Secretary is a proper method to effectuate service on the Defendants. On July 13, 2022, Plaintiffs filed an Affidavit for Service of Process on the Secretary of the Commonwealth, which stated that the Plaintiffs had served the Secretary on July 5, 2022, and the Secretary had mailed the documents on July 11, 2022 to Gurpreet Singh, who resided at the New York address Plaintiffs provided. (*See* Service of Process on Secretary; Re-Corrected Declaration ¶ 7.) Additionally, on November 10, 2022, Plaintiffs filed a Certificate of Mailing, in which they stated that on April 24, 2022 and November 10, 2022, they "mailed a copy of the Complaint and all exhibits by first class mail postage prepaid" to the Defendant DRM at its registered agent's address in Virginia and to Defendant Gurpreet Singh at his New York address. (*See* Certificate of Mailing.) Even though the Affidavit of Service of Process on the Secretary that the Plaintiffs filed only listed Gurpreet Singh—and not DRM—as the Defendant to be served, the Court finds that service was nevertheless proper as to both DRM and Gurpreet Singh because (1) the process included a copy of the Complaint which listed both defendants, and (2) the Secretary of the Commonwealth

5

confirmed that the process had been mailed to Gurpreet Singh. Given that Singh is both the registered agent of DRM and sole proprietor of DRM, the Court finds that making him aware of and serving him with a copy of the Complaint was sufficient to constitute service of process "reaching" Defendant DRM. *See* Va. Code Ann. § 8.01-288 ("process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter.").[1]

Having thus concluded that Plaintiffs have satisfied the procedural requirements for entry of default judgment, the Court now turns to the substance of Plaintiffs' claims.

### B. Substantive Claims

#### 1. Count I: Breach of Contract

As to Defendant DRM, Plaintiffs have properly alleged a claim for breach of contract. In Virginia, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

The Court finds that Plaintiffs have properly alleged a legally enforceable obligation, to wit: DRM owed Plaintiffs an obligation to construct the residential dwelling in the manner described in the DRM Contract. (*See generally* DRM Contract.) Additionally, Plaintiffs have adequately demonstrated that DRM breached that obligation by both failing to construct the

---

[1] Plaintiffs also claim they complied with Virginia Code Section 8.01-299 by posting the process at the dwelling of the registered agent in Virginia. (Re-Corrected Declaration ¶ 4.) However, Virginia Code Section 8.01-299, which does allow posting of the process on a dwelling under a certain set of conditions, only applies to domestic corporations. Va. Code Ann. § 8.01-299 (titled "How process served on *domestic* corporations and limited liability companies generally."). As plaintiffs have averred that Defendant DRM is a New York corporation, Plaintiffs cannot serve DRM under the domestic corporation service statute. Furthermore, the foreign corporation service statute does not permit the posting of process on a dwelling as an adequate method of service of process. *See* Va. Code Ann. § 8.01-301 (titled "How process served on *foreign* corporations generally."). Nonetheless, Plaintiffs have properly served Defendants by effectuating service on the Secretary of the Commonwealth pursuant to Virginia Code § 8.01-329, as described in the body of this Opinion.

residence and failing to return the $40,000 deposit that Plaintiffs made in anticipation of the construction. (*See* DRM Contract 5 ("Builder will commence construction work within two days after received [sic] the payment. Builders best efforts to complete the work within 12 Months in weather permitting conditions.").) Further, Plaintiffs have properly shown that DRM's breach of its contractual obligation harmed Plaintiffs because DRM's failure to follow through with the construction resulted in Plaintiffs hiring a different construction company to construct their residence at a more expensive price. Additionally, Plaintiffs lost their $40,000 deposit. Based on these undisputed allegations, Plaintiffs have stated a breach of contract claim for which relief is warranted.

### 2. Count II: Conversion

As to both Defendants, Plaintiffs have properly stated a claim for conversion for which relief is warranted. Under Virginia law, conversion is "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Federal Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517–18 (E.D.Va. 2001) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)). To succeed on a conversion claim in Virginia, the plaintiff must demonstrate "by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp.*, 92 S.E.2d at 365).

Plaintiffs deposited $40,000 with Defendants in anticipation of the construction of their residence. Upon realizing that Defendants would not construct the residence, Plaintiffs demanded Defendants return the deposit several times. Defendants even acknowledged that Plaintiffs were

entitled to return of the deposit, yet Defendants still refused to return the deposit. Therefore, Plaintiffs have properly alleged their right to possess the $40,000 deposit and have demonstrated Defendant's wrongful exercise of control over the deposit, depriving Plaintiffs from possessing it. Based on these undisputed allegations, Plaintiffs have stated a conversion claim for which relief is warranted.

### 3. Count III: Fraud

As to both Defendants, Plaintiffs have failed to state a claim of actual fraud. "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract." *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 446–47 (4th Cir. 1990). However, the source-of-duty rule prescribes that in actions alleging both a tort claim and a breach of contract claim, for the tort claim to survive, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (1998) (citing *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

In Virginia, a plaintiff advancing a cause of action for actual fraud must prove "by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). The "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996) (internal citations omitted). "[I]f a defendant makes a promise that, *when made*, he has no intention of performing, that promise is considered a misrepresentation of present

fact and may form the basis for a claim of actual fraud." *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010) (quoting *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008)) (emphases added). However, if the alleged "false representation" is a mere failure to perform on a promise, it is only sufficient to support an actual fraud claim if the promisor had no intention of performing *at the time the promise was made*. *Id.* at 541 n. 5 (emphases added). "The plaintiff bears the burden of proving these elements by clear and convincing evidence." *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014).

Here, as the basis for the fraud claim, Plaintiffs assert that "Defendants never intended to perform the contract for the construction of Plaintiffs' residence." (Mot. Default J. 2, ECF No. 18.) This bare recitation of the legal standard is insufficient factual basis to sustain a fraud claim at default judgment. Plaintiffs fail to allege that Defendants had a "contemporaneous intent not to perform on the promise," before the execution of the DRM Contract. *See Station #2, LLC*, 695 S.E. 2d. at 540. The only indication of Defendants' lack of intent to perform is that *after* they entered into the contract, Defendants never engaged in "any of the steps normally associated with a general contractor's preparation for performance of a residential construction contract, including seeking quotations from subcontractors and materials suppliers;" instead, Defendants "made numerous excuses for [their] failure to perform." (Compl. ¶¶ 8–9.) Plaintiffs present no factual allegations from which the Court can conclude that Defendants possessed an intent not to perform the contract prior to the execution of the DRM Contract. Thus, on the facts before the Court, Plaintiffs have not stated an actual fraud claim for which relief is warranted and the motion for default judgment as to Count III of the complaint will be denied without prejudice. Plaintiffs may renew the motion as to this count in the event that they can articulate an actual fraud claim. *See United States v. Kotzev*, No. 1:18-CV-1409, 2020 WL 1217153, at *4 (E.D. Va. Mar. 11, 2020)

(allowing the party to renew the motion for default judgment if it can find supporting authority for the position taken).

### 4. Count IV: Virginia Consumer Protection Act

Plaintiffs have likewise failed to articulate a claim under the Virginia Consumer Protection Act (VCPA). The VCPA is, as the name suggests, a consumer protection law that was intended to promote "fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. Specifically, the VCPA prevents "suppliers"—in connection with a "consumer transaction"—from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *Id.* § 59.1-200(A)(14). Both "supplier" and "consumer transaction" have particular definitions specific to the VCPA.[2,3] *Id.* § 59.1-198. To succeed on a VCPA claim, Plaintiffs must demonstrate that Defendants qualify as a

---

[2] "'Supplier' means a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions." Va. Code Ann. § 59.1-198.

[3] "Consumer transaction" means:

1. The advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes;

2. Transactions involving the advertisement, offer or sale to an individual of a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged;

3. Transactions involving the advertisement, offer or sale to an individual of goods or services relating to the individual's finding or obtaining employment;

4. A layaway agreement, whereby part or all of the price of goods is payable in one or more payments subsequent to the making of the layaway agreement and the supplier retains possession of the goods and bears the risk of their loss or damage until the goods are paid in full according to the layaway agreement;

5. Transactions involving the advertisement, sale, lease, or license, or the offering for sale, lease or license, of goods or services to a church or other religious body; and

6. Transactions involving the advertisement of legal services that contain information about the results of a state or federal survey, inspection, or investigation of a nursing home or certified nursing facility as described in subsection E of § 32.1-126.

Va. Code Ann. § 59.1-198.

supplier in a consumer transaction, and they must further demonstrate both a reliance on the misrepresentation and that they suffered damages as a result of the misrepresentation. *Owens*, 764 S.E. 2d at 260–61. While not necessary, if a plaintiff can demonstrate that the defendant's actions were "willful," the plaintiff is entitled to triple the amount of damages sustained. *See* Va. Code Ann. § 59.1-204(A). A plaintiff bringing a civil suit under the VCPA must prove its claim by a preponderance of the evidence. *Ballagh v. Fauber Enterprises, Inc.*, 773 S.E.2d 366, 370 (Va. 2015).

Here, the Plaintiffs failed to articulate how Defendants fall within the definition of a "supplier" and how the execution of a construction contract is a "consumer transaction" under the VCPA. Additionally, Plaintiffs have not alleged facts to show how Defendants' actions were "willful" to justify the treble damages award they seek. As stated above, while Defendants did not perform their obligations under the contract, Plaintiffs fail to allege facts that demonstrate how that non-performance was "willful." Plaintiffs' barebones recitations of the law with no specification as to how the facts alleged in the Complaint tie to their VCPA claim does not pass muster at this stage. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." (internal citations omitted)). More importantly, Plaintiffs have failed to allege how the Defendants' non-performance of a contract employed the use of "deception, fraud, false pretense, false promise, or misrepresentation." Va. Code Ann. § 59.1-200(A)(14). "A mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Patrick v. Summers*, 369 S.E.2d 162, 164 (Va 1988); *see Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 554–55 (E.D. Va. 2001) (holding that a "failure to fulfill [a] promise is a claim sounding in contract, not in the VCPA").

11

While Plaintiffs have properly alleged that that Defendants failed to perform the contract after receiving Plaintiffs' $40,000 deposit, they have not articulated how the Defendants' actions involved any false promises, deceit, or misrepresentations, as opposed to the unfulfilled promises and unlawful withholding of property that amount to breach of contract and conversion claims. Thus, on the facts before the Court, Plaintiffs have not articulated a Virginia Consumer Protection Act claim for which relief is warranted and the motion for default judgment as to Count IV of the complaint is denied without prejudice. Plaintiffs may renew the motion as to this Count in the event they amend their pleadings to properly articulate a breach of the VCPA. *See Kotzev*, 2020 WL 1217153, at *4 (allowing the moving party to renew the motion for default judgment if it can find supporting authority for the position taken).

### C. Attorney's Fees

At this stage, the Plaintiffs fail to articulate a claim for reasonable attorney's fees. The Court applies Virginia law to determine whether an award of attorney's fees is warranted. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999). "In general, absent a contractual or statutory provision to the contrary, a prevailing party cannot recover attorneys' fees and expenses from a losing party." *Id.* (citing *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991)).

In this instance, the only authorization of attorney's fees that Plaintiffs point to is the Virginia Consumer Protection Act, which states that "in addition to any damages awarded, such person [who suffers loss as the result of a violation of this chapter] also may be awarded reasonable attorneys' fees and court costs." Va. Code Ann. § 59.1-204(B). Other than the text of Section 59.1-204, there is nothing else that provides for an allocation or authorization of attorney's fees. As stated above, since Plaintiffs have failed to allege sufficient facts to support their VCPA claim

and failed to produce any contract that authorized attorney's fees, Plaintiffs are not entitled to an award of attorney's fees and costs at this stage. *See United Food & Com. Workers, Loc. 400 v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989) ("Without such express contractual or statutory authorization, courts generally adhere to the American Rule which requires each party to bear its own litigation costs, including attorney's fees.").

### D. Damages

At this stage, the Court does not address the question regarding damages. Given the rulings above, Plaintiffs are free—if they so choose and are able—to re-plead additional facts in support of their allegations of actual fraud in Count III and a violation of the Virginia Consumer Protection Act in Count IV. As such, the Court will withhold a damages calculation at this time.

### IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Entry of Default Judgment (ECF No. 18) will be granted as to Counts I and II and denied without prejudice as to Counts III and IV. An appropriate Order shall follow.

/s/ *[signature]*
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: April 19, 2023